UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TRADITIONALIST AMERICAN KNIGHTS OF THE KU KLUX KLAN, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>CITY OF DESLOGE, MISSOURI, )<br>)<br>Defendant. ) | Case No. 4:13-CV-810 NAB |

## MEMORANDUM AND ORDER

The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). Plaintiffs Traditionalist American Knights of the Ku Klux Klan and Imperial Wizard Frank Ancona (collectively "KKK") allege free speech and due process violations related to two iterations of an ordinance prohibiting solicitation and distribution in the roadways of Defendant City of Desloge, Missouri ("City"). [Doc. 24.] This Court previously granted a preliminary injunction barring enforcement of the ordinance. [Doc. 41.] The Eighth Circuit Court of Appeals reversed and remanded for proceedings not inconsistent with its opinion. *Traditionalist Am. Knights of the Ku Klux Klan v. City of Desloge, Mo.*, 775 F.3d 969 (8th Cir. 2014). On remand, the parties agreed to file early dispositive motions before conducting any additional discovery. This matter is now before the Court on the City's Motion for Summary Judgment [Doc. 73] and the KKK's Motion for Partial Summary Judgment [Doc. 75]. Both motions have been fully briefed. For the reasons set forth below, the Court will grant the City's motion with respect to Counts I and II of the KKK's Amended Complaint, deny the City's motion with respect to Count III, and deny the KKK's motion.

I.     The City's Motion for Summary Judgment

The KKK's Amended Complaint raises three counts. [Doc. 24.]  Counts I and II challenge a repealed prior version of the City's ordinance ("repealed ordinance").  Count III challenges the current ordinance.  The City argues that Counts I and II should be dismissed as moot and that it is entitled summary judgment on Count III because the Eighth Circuit's decision is the law of the case.  The KKK counters that it suffered harm under the repealed ordinance and maintains a claim for nominal damages and that the Eighth Circuit's decision was a provisional one based on the limited preliminary injunction record.  The Court agrees with the City that Counts I and II are moot.  However, the Court finds that the Eighth Circuit's decision should not be afforded law-of-the-case status and therefore the KKK should be allowed to proceed with Count III.

A.     Counts I and II Challenging the Repealed Ordinance Are Moot

"Mootness is akin to the doctrine of standing because the requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Phelps-Roper v. City of Manchester, Mo.*, 697 F.3d 678, 687 (8th Cir. 2012) (en banc) (internal quotations omitted).  "When a law has been amended or repealed, [claims] seeking declaratory or injunctive relief for earlier versions are generally moot unless the problems are capable of repetition yet evading review." *Id.* (internal quotations omitted).  If there is a "reasonable expectation" that an earlier version will be reenacted, a claim challenging that version is not moot. *Id*.  A request for nominal damages that would have no more effect than declaratory or injunctive relief will not save an otherwise moot claim. *Morrison v. Bd. of Educ. of Boyd Cty.*, 521 F.3d 602, 611 (6th Cir. 2008) (cited with approval in *Phelps-Roper*, 697 F.3d. at 687).

Here, there is no indication that the City intends to enforce or reenact the repealed ordinance. Enacted shortly after the KKK filed this action, the current ordinance clarifies and narrows the scope of the repealed ordinance. By contrast with the repealed ordinance, it defines key terms, explicitly states that solicitation and distribution are permissible on sidewalks and in city parking lots and parks, and provides for severability of the solicitation and distribution provisions.[1] The current ordinance reflects the City's intent to exempt expressive activity on

---

[1] The repealed ordinance provided:

> No person shall stand in or enter upon a roadway for the purpose of soliciting rides, employment, business or charitable contributions from, or distribute anything to, the occupant of any vehicle, except from the occupants of motor vehicles parked off the traveled portion of a roadway adjacent to a sidewalk if the solicitor is on a sidewalk.

City of Desloge, Mo. Ord. § 220.205 (effective Apr. 8, 2013). The current ordinance provides:

> 1. No person shall stand in or enter upon a Roadway for the purpose of:
>
>    (i) soliciting rides from the occupant of any vehicle;
>    (ii) soliciting employment from the occupant of any vehicle;
>    (iii) soliciting business or sales of anything from the occupant of any vehicle; or
>    (iv) soliciting charitable contributions from the occupant of any vehicle.
>
> 2. No person shall stand in or enter upon a Roadway for the purpose of distributing anything to the occupant of any vehicle.
>
> 3. The Solicitation described in subparagraph 1 and the Distribution described in subparagraph 2, are each permissible to an occupant of a non-moving vehicle on the Roadway adjacent to the sidewalk and if the person doing so is on the adjacent sidewalk.
>
> 4. Nothing contained herein is intended to prohibit Solicitation or Distribution by any person on a sidewalk, to

sidewalks, curbs, and parking lots and addresses infirmities that led the Honorable Audrey G. Fleissig to enjoin the original version of the ordinance in previous litigation. *Traditionalist Am. Knights of Ku Klux Klan v. City of Desloge, Mo.*, 914 F. Supp. 2d 1041, 1045, 1050 (E.D. Mo. 2012); *see Phelps-Roper*, 697 F.3d at 687 (finding no reasonable expectation of reenactment where funeral protest ordinance was amended in response to considered Sixth Circuit decision in

---

> another person on the sidewalk, or by and among persons in a city parking lot or city park.

City of Desloge, Mo. Ord. § 220.205 (effective Aug. 22, 2013). The current ordinance defines terms as follows:

> "ROADWAY": "[t]he portion of a public street, road, or highway improved, designed, or ordinarily used for vehicular travel and extending from one (1) curb or edge of pavement to the opposite curb or edge of pavement, including lanes commonly used for parking and including center medians and lane dividers."
>
> "SIDEWALK": "[t]hat portion of a public right-of-way between the curb lines or the lateral lines of the pavement on the Roadway and the adjacent property lines, intended for use by pedestrians."
>
> "Solicitation": "an exchange between the person within the Roadway and an occupant of a vehicle on the Roadway that often requires the passing or exchange of money and/or other items."
>
> "Distribution": "an exchange between the person in the Roadway and an occupant of a vehicle on the roadway, which requires an acceptance or rejection of the item being distributed."

*Id*. In addition, the current ordinance contains the following severability clause:

> In the event that any section, sentence clause, phrase or portion of this Ordinance is held to be invalid by a court of competent jurisdiction, the remainder of the Ordinance shall continue in full force and effect, to the extent the remainder can be given effect without the invalid portion.

City of Desloge, Mo. Ord. § 220.205 § 2 (effective Aug. 22, 2013).

4

emerging area of constitutional law). In addition, the severability clause cabined judicial review in favor of the City in this litigation. [Doc. 41 p. 8.] The City has not arrested or prosecuted KKK members for engaging in prohibited activity under the repealed ordinance and specifically disavowed any intent to do so at the preliminary injunction hearing. Finally, the KKK is capable of challenging any further changes to the ordinance, *Phelps-Roper*, 697 F.3d at 687, and it would waste judicial resources to consider the constitutionality of the repealed ordinance, *Morrison*, 521 F.3d at 611. The Court finds that Counts I and II challenging the repealed ordinance are moot.

### B. The Eighth Circuit's Decision Is Not the Law of the Case

The City argues that it is entitled to summary judgment on Count III because the Eighth Circuit's decision should be afforded law-of-the-case status. The Court disagrees. Due to the limited purpose of a preliminary injunction and the use of procedures that are less formal and evidence that is less complete than a trial on the merits, "it is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830, 1834, 68 L. Ed. 2d 175 (1981). The Eighth Circuit has "long held that findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding." *U.S. Sec. & Exch. Comm'n v. Zahareas*, 272 F.3d 1102, 1104-05 (8th Cir. 2001) (internal quotations omitted). "A preliminary determination of likelihood of success on the merits in a ruling on a motion for preliminary injunction is ordinarily tentative, pending a trial or motion for summary judgment." *Goodheart Clothing Co. v. Laura Goodman Enterprises, Inc.*, 962 F.2d 268, 274 (2d Cir. 1992). "It would therefore be anomalous at least in most cases … to regard the initial ruling as foreclosing the subsequent, more thorough consideration of the merits that the preliminary injunction expressly envisions." *Id*.

This Court sees no reason to depart from the general rule that a preliminary injunction decision will not foreclose further proceedings on the merits. The Eighth Circuit began its analysis by reciting the preliminary injunction standard, repeatedly referenced the preliminary injunction record, and suggested evidentiary deficiencies that might change the outcome on the merits, namely, evidence indicating that "the city's real motive for curtailing speech activities was to discriminate against particular messages." *Traditionalist Am. Knights of the Ku Klux Klan*, 775 F.3d at 974, 979. Absent an explicit directive from the Eighth Circuit that the decision should be treated as on the merits, this Court will not afford it law-of-the-case status. *See Pitt News v. Pappert*, 379 F.3d 96, 104-05 (3d Cir. 2004) (Alito, J.) (holding preliminary injunction decision by prior panel was not binding on later panel reviewing final judgment unless prior panel had "taken an unequivocal position on the merits," "particularly where important First Amendment issues are raised"). The cases cited by the City are inapposite. *Naser Jewelers, Inc. v. City of Concord, N.H.*, 538 F.3d 17 (1st Cir. 2008) and *Entergy, Arkansas, Inc. v. Nebraska*, 241 F.3d 979, 987 (8th Cir. 2001) both involved courts of appeals determining whether their prior decisions should be afforded law-of-the-case status following additional proceedings in the district court. The Court will deny the City's motion for summary judgment as to Count III.

## II.     The KKK's Motion for Partial Summary Judgment

In ruling on the KKK's motion for preliminary injunction, this Court found that the KKK could challenge the distribution provisions of the ordinance, but lacked standing to challenge the solicitation provisions. [Doc. 41 p. 8.] The Court further found that the distribution provisions were content neutral and therefore subject to intermediate scrutiny. [*Id.* at 9.] On appeal, the KKK conceded that the distribution provisions were content neutral under prevailing precedent. Following the Eighth Circuit's decision in this case, the Supreme Court decided *Reed v. Town of*

*Gilbert, Arizona* and vacated the First Circuit's judgment in *Thayer v. City of Worcester, Massachusetts*, remanding the case for further consideration in light of *Reed*. 135 S. Ct. 2218, 192 L. Ed. 2d 236 (2015); 135 S. Ct. 2887, 192 L. Ed. 2d 918 (2015). The KKK contends that *Reed* and the Supreme Court's decision vacating *Thayer* constitute intervening authority that alters the content neutrality analysis in this case. The KKK argues that, under *Reed*, the City's ordinance is content based on its face and therefore the KKK is entitled to summary judgment on Count III. The Court disagrees.

In *Reed*, the Supreme Court struck down a municipal code that applied differing restrictions to signs depending on whether they were "ideological" (communicating a message or idea), "political" (designed to influence the outcome of an election), or a "temporary directional sign" (directing the public to church or some other qualifying event). 135 S. Ct. at 2227. *Reed* is notable in that it clarified the content based inquiry and arguably expanded the universe of content discrimination. The "crucial first step" is to evaluate a law on its face, without regard for the law's purpose. 135 S. Ct. at 2228. A law is content based if it targets speech based on communicative content, including topic, idea, or subject matter, and, more subtly, "function or purpose." *Id.* at 2226-27. *Reed* makes clear that viewpoint discrimination is merely "a more blatant and egregious form of content discrimination" and that "a speech regulation targeted at specific subject matter is content based even if it does not discriminate among viewpoints within that subject matter." *Id.* at 2230 (internal quotations omitted). The touchstone inquiry is "whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys." *Id.* at 2227.

In light of *Reed*, the Supreme Court vacated the First Circuit's decision upholding a panhandling ordinance in *Thayer v. City of Worcester, Massachusetts*. 135 S. Ct. 2887, 192 L.

7

Ed. 2d 918 (2015). *Thayer* involved an ordinance that made it unlawful to beg, panhandle or solicit, defined as seeking an immediate donation of money or other thing of value, in an aggressive manner. The First Circuit found the ordinance was content neutral. 755 F.3d 60, 71 (1st Cir. 2014). On remand, the district court found it was content based: "Simply put, *Reed* mandates a finding that [the ordinance] is content based because it targets anyone seeking to engage in a specific type of speech, *i.e.*, solicitation of donations." No. CV 13-40057-TSH, 2015 WL 6872450 (D. Mass. Nov. 9, 2015).

Other courts have reached a similar conclusion. *See McLaughlin v. City of Lowell*, No. 14-10270-DPW, 2015 WL 6453144, at *4 (D. Mass. Oct. 23, 2015) ("It appears at this point clear that regulations of solicitation which single out the solicitation of the immediate transfer of funds for charitable purposes are content-based."); *Browne v. City of Grand Junction*, No. 14-CV-00809-CMA-KLM, 2015 WL 5728755, at *9 n. 8 (D. Colo. Sept. 30, 2015) (observing that any law prohibiting all solicitation speech in a public forum constitutes content discrimination under *Reed*); *Norton v. City of Springfield, Ill.*, 806 F.3d 411 (7th Cir. 2015) (reversing rejection of plaintiffs' argument that targeting of oral requests for money now but not requests for money later constitutes content discrimination).

If the solicitation provisions of the City's ordinance were at issue, *Reed* would certainly constitute intervening authority. However, the distribution provisions are distinguishable from the panhandling ordinances struck down in the wake of *Reed*. The City's ordinance provides that, "No person shall stand in or enter upon a Roadway for the purpose of distributing *anything* to the occupant of any vehicle." City of Desloge, Mo. Ord. § 220.205 (effective Aug. 22, 2013) (emphasis added). Distribution is defined as "an exchange between the person in the Roadway and an occupant of a vehicle on the roadway, which requires an acceptance or rejection of the

8

*item* being distributed." *Id*. The distribution provisions plainly apply to the exchange of <u>any item</u> without regard for communicative content. An officer enforcing the ordinance need not evaluate what is being distributed to determine whether a violation has occurred. *Reed*, 135 S. Ct. at 2226-27. *Reed*, therefore, does not alter the Court's finding that that the distribution provisions are content neutral. *See Thayer*, 2015 WL 6872450, at *12 (ordinance prohibiting walking or standing upon a roadway, subject to certain "lawful" exceptions, was content neutral); *Watkins v. City of Arlington*, No. 4:14-CV-381-O, 2015 WL 4755523, at *7 (N.D. Tex. Aug. 12, 2015) (ordinance prohibiting in-roadway distribution of "any material" to occupant of a vehicle stopped at a signal was content neutral). Because the distribution provisions of the ordinance are content neutral, they are not subject to strict scrutiny. Therefore, the KKK's motion for partial summary judgment will be denied.

### III. Conclusion

For the foregoing reasons, the Court will grant the City's motion with respect to Counts I and II of the KKK's Amended Complaint, deny the City's motion with respect to Count III, and deny the KKK's motion.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED in part and DENIED in part**. [Doc. 73.] The motion is **GRANTED** with respect to Counts I and II of Plaintiffs' Amended Complaint. The motion is **DENIED** with respect to Count III.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Partial Summary Judgment is **DENIED**. [Doc. 75.]

**IT IS FURTHER ORDERED** that Counts I and II of Plaintiffs' Amended Complaint are dismissed as moot.

**IT IS FINALLY ORDERED** that a Rule 16 Conference is set on **Tuesday, March 8, 2016 at 10:00 a.m.** in the chambers of the undersigned. An order setting forth the Rule 16 will accompany this Memorandum and Order.

Dated this 23rd day of February, 2016.

    /s/ Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE